## Herman Cohn, trading as Empire Loan Bank, Appellant, v. New Jersey Fidelity & Plate Glass Insurance Company, Appellee.

### Gen. No. 31,234.

INSURANCE—*construction of burglar-proof safe insurance policy.* Burglary insurance policy covering the contents of a "fire and burglar-proof" safe construed and held to apply only to the burglar-proof compartment within the safe, and hence not to cover valuables taken from within the safe but outside the burglar-proof compartment.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. HOWARD W. HAYES, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed. Opinion filed March 29, 1927.

FREDERICK A. BROWN and SAMUEL J. HACHTMAN, for appellant; WM. G. WORTHEY, of counsel.

PHILIP H. TREACY, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This suit is brought on a burglary insurance policy. The defendant insurance company denies that the loss claimed is covered by its policy. After a trial without

a jury, the trial court agreed with defendant's theory and entered a finding and judgment against the plaintiff, who appeals.

Plaintiff is a pawnbroker. In 1924 he had in his possession diamonds, watches and jewelry pledged for loans made by him, and worth approximately $75,000, and in addition he usually carried similar merchandise of his own, worth approximately $50,000. All this property he kept at night in two large safes, the walls of which were fireproof, consisting of an outer plate of steel less than half an inch thick, an inner plate of steel less than a quarter of an inch in thickness, and, between these steel plates, a fireproof filling several inches thick similar to concrete. The outer door of each safe was five inches thick, having a thin steel plate outside and along the edges of the door, inclosing a similar fireproof filling. Inside each of the safes was built a burglar-proof steel chest or compartment approximately a cubic foot in interior dimensions, having a steel door two and one-half inches thick and a combination lock. It appears from the evidence that insurance men and manufacturers of safes use different terms to designate the three types of safes in common use. One type, which is built entirely of steel and found only in banks, is designated by them as "burglar-proof." Another type, designated as "fire and burglar-proof," is a safe which has "a fireproof jacket with a burglar-proof chest inside." This is the type of safes which plaintiff had. The third type, designated only as "fireproof," has a fireproof covering and has no burglar-proof compartment. The evidence further shows that the premium rate for burglary insurance upon goods kept in "burglar-proof" safes is very much less than upon the same goods when kept in "fire and burglar-proof" safes.

In February, 1924, defendant executed and delivered to plaintiff the insurance policy on which this suit is brought. The photographic copy of the policy in the

record shows that a printed form was used in which, between an opening paragraph and a number of printed "General Agreements" regarding notices, proofs of loss, etc., there was a blank space containing only the printed legend "(Attach Rider Here)." The opening paragraph states, in substance, that defendant, in consideration of a stated premium, agrees to indemnify the plaintiff in the total sum of $50,000 for 12 months from February 26, 1924. The kind and character of losses included in this indemnity agreement are particularly specified, and are only specified, in two riders, each with a special indorsement attached to it, which are pasted in the blank space mentioned.

The first rider provides for indemnity to the extent of $25,000, for losses occasioned by robbery, "commonly known as 'Hold-up,'" from within the office or counting-room or store of the assured, of any of the property scheduled in that rider, which is labeled "Office Hold-up Rider." There is no claim in this case for any loss under that rider or its special indorsement.

The second rider, attached immediately under the first, is the one under which a loss is claimed in this case. This rider is also a printed form, with blanks filled in with a typewriter. In the lower left-hand corner of the first page of this rider are printed the words: "SAFE RIDER." It begins as follows:

"For All Loss of money in current use, negotiable Securities (as hereinafter defined), uncancelled United States Government Post Office or Revenue Stamps, and merchandise described in the Schedule hereinafter contained, and therein stated to be insured hereunder, in consequence of the felonious abstraction of the same by burglars from the interior of the safe or safes described in the said Schedule and located in the office or storeroom actually occupied by the Assured and described in said Schedule, and hereinafter called the premises, by such burglars who shall have made entry

into such safe or safes by the use of tools, explosives, electricity or chemicals directly thereupon, of which force and violence there shall be visible marks on the exterior thereof.''

Then follows a series of printed ''Special Agreements,'' of which such parts as are material to the question here involved are as follows:

''A.    The Company's liability is limited to the amount of insurance applicable to the contents of the several safes respectively as stated in Statement 6 of the Schedule, and also to the amounts attached to the several items respectively of Statement 5 of the Schedule, and subject to such limits as respects each safe and each item, the total liability hereunder is limited to the sum of Twenty-five Thousand Dollars ($25,-000.00).

''B.    The Company shall not be liable.  *  *  *  (9) For loss of any property under insurance attaching specifically to Items B or D of Statement 5 of the Schedule, unless the same shall have been feloniously abstracted from the burglar-proof part of the safe described in the Schedule after entry into the said burglar-proof part shall have been gained by the use of tools or explosives directly upon the said burglar-proof part as well as upon the fire-proof part, if any, of said safe.  *  *  *

''C.    The term 'burglar-proof' as applied in this Policy to a safe or to a part of a safe shall be understood to mean such safe or such part of a safe as is constructed of steel and is designed by the safe manufacturers to furnish protection against burglars and styled by them burglar-proof.    A safe, chest or compartment of a safe shall not be considered burglar-proof, unless it shall have steel walls at least one inch in thickness, and unless the steel in the door or doors thereof shall be at least one and one-half inches in thickness, exclusive of bolt work.''

Cohn v. New Jersey Fidelity & Plate Glass Ins. Co., 244 Ill. App. 123.

After these special agreements follows the "Schedule," consisting of 15 consecutively numbered "statements." Statement 5 of the schedule is subdivided into Items A, B, C, D and E, and statement 6 contains 16 tabulated items, beginning with the letter "(a)" and ending with the letter "(p)".

Statement 4 of the schedule is as follows:

"4. The merchandise insured under this policy consists of merchandise usual to the business."

Statement 5 is as follows, so far as it is applicable in this case:

"5. The insurance granted by this policy attaches specifically as follows:

\*    \*    \*                                          "Premium.

"Item B.    In amount of $25,000.00 to
merchandise as described in
statement 4 in burglar-proof
safe or in burglar-proof part
of fire and burglar-proof safe
Nos. 1 & 2.                                      $88.00"

Statement 6 of the schedule, so far as applicable here, is as follows:

"6. The safe or safes are described and designated as follows:

|  | Safe No. 1 | Safe No. 2 |
|---|---|---|
| \*    \*    \* | | |
| (b) The safe is so-called 'burglar proof,' fire and 'burglar proof' or fire-proof only .......... | b Fire & Bur-glar Proof | b Fire & Bur-glar Proof |
| \*    \*    \* | | |
| (d) There is a 'burglar proof' chest inside of safe .......... | d Yes | d Yes |

| | | |
|---|---|---|
| (e) Such chest is locked by combination or time lock .......... | e Combination | e Combination |
| * * * | | |
| (k) Thickness of steel of outer door exclusive of bolt work.... | k 5 inches | k 5 inches |
| * * * | | |
| (m) Thickness of steel of so-called 'burglar proof' chest door exclusive of bolt work .......... | m 2½ inches | m 2½ inches |
| * * * | | |
| (o) Amount of insurance applicable to contents of burglar proof chest of each safe respectively | Money      $ Nil Merchandise. See End. | Money      $ Nil Merchandise. See End. |
| (p) Amount of insurance applicable to each safe respectively but outside of the burglar proof chest .......... | Money      $ Nil Mdse.      Nil | Money  $ Nil Mdse.      Nil." |

The words "See End," opposite Item (o) in the schedule, refer to the special indorsement pasted on

the front of the "Safe Rider."    That indorsement reads as follows:

"It is understood and agreed that the insurance granted under the Safe Rider covers blanket in Safes No. 1 and No. 2 but the Company's total liability on both Safes shall not exceed Twenty-five Thousand Dollars ($25,000.00)."

Plaintiff testified, and it was not disputed, that on the night of April 5, 1924, his shop was entered by burglars, who blew off the outer door of safe No. 2 described in the schedule, and carried away diamonds, watches and jewelry valued at more than $25,000 from the interior of the safe, but they were unable to enter the burglar-proof inner compartment, which at that time had in it eight or ten thousand dollars' worth of diamonds.    The loss claimed is for the value of the property so taken.    It was stipulated that such value was in excess of $25,000.

The controversy between the parties turns on the proper construction to be given to the special indorsement attached to the safe rider.    Plaintiff contends that the indorsement should be construed to mean that the policy covers everything contained in both safes, whether inside or outside the burglar-proof chests, to the extent of $25,000 in value.    Defendant contends that the indorsement means that "the insurance granted under the Safe Rider" covers, like a "blanket," such property, in either or both of the safes, to the amount of $25,000, as is "therein stated to be insured thereunder," viz, the property contained only in the burglar-proof chests.

The argument of the plaintiff on this point overlooks, or ignores, the fact that the word "covers" in the indorsement is preceded not only by the word "insurance" but by the phrase "the insurance granted under the Safe Rider."    Under well-established principles of construction, effect must be given to all the language used in the indorsement.    This can be done,

and can only be done, by ascertaining from the "Safe Rider" what insurance was "granted" under it. By the terms of the first paragraph of the safe rider, the only merchandise insured was the "merchandise *described in the schedule.    *    *    and therein stated to be insured hereunder.*" The only merchandise so described and so stated was the "merchandise usual to the business" of the assured, when contained either in a "burglar-proof" safe, or in the "burglar-proof part" of a "fire and burglar-proof" safe. Plaintiff's safes were not "burglar-proof" as that term is defined in Special Agreement C in the safe rider. His safes, as the schedule states, were the type known as "fire and burglar-proof." By Item B in statement 5 of the schedule "the insurance granted" *attached specifically to merchandise in the burglar-proof parts* of plaintiff's safes. The same limitation appears in items (o) and (p) of statement 6 of the schedule, and again in Paragraph B of the special agreements above quoted.

When these paragraphs are all considered together, as they must be, we are of the opinion that the special indorsement does not change the meaning or effect of the safe rider to which it is attached, except to make the insurance of $25,000 mentioned in the special indorsement cover ("blanket") all the property, and only the property, insured by the terms of the safe rider, whether such property was in safe No. 1 or safe No. 2 or both. The safe rider insured only such property as was kept in the "burglar-proof part" of those safes, and none of the provisions of the rider which so state was changed by the indorsement. In other words, we hold that the words "covers blanket in safes No. 1 and No. 2," found in the indorsement, are limited and qualified by the preceding words in the same sentence, "insurance granted under the Safe Rider."

This view is confirmed by other circumstances appearing from the evidence. For example, the amount of premium, $88, paid for $25,000 worth of burglary insurance appears to be the usual rate charged for burglary insurance of merchandise kept in "burglar-proof" safes, after deducting certain agreed discounts, and is less than one-third of the amount of premium that would be charged if all the contents of the plaintiff's safes were intended to be covered. Again, it appears, from the evidence and from the face of the photographic copy of the policy, that the policy as originally written contained the figures "$12,500" after the word "Merchandise" in the second and third columns of statement 6 of the schedule, opposite the item "(o)," and that these figures were erased and the words, "See End," inserted when the special indorsement was placed on the safe rider. It is true that the witnesses disagree as to what was *said* at that time, but they do not disagree as to what was *done* at that time. If the testimony as to what was said at that time was admissible, the preponderance of the evidence upon the point tends to support the construction we have given to the indorsement. If all such testimony be disregarded, and we think it should be, there remains the significant fact that the rider was not altered in any respect except as stated. Having reached this conclusion as to the meaning and effect of the indorsement, it will not be necessary to consider other questions discussed in the briefs.

The judgment is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.